No. 1095.—J. M. JUILLARD *v.* P. ROGAY.

Where a party, during the late war, placed a large amount of Confederate treasury notes in the hands of another as agent, to invest in the purchase of cotton, and the agent failed to give a correct and faithful account of the transactions to his principal, no action will lie to enforce a settlement of the dispute between the principal and agent.

APPEAL from the Fourth District Court of New Orleans. *Théard,* J. *A. & M. Voorhies,* for plaintiff and appellant. *A. Robert,* for defendant and appellee.

WYLY, J. Plaintiff sues the defendant to recover the value of seventy-eight bales of cotton which he alleges the defendant bought, as his agent, with his funds, and afterwards illegally sold and appropriated the proceeds to his own use.

The supplemental petition alleges that in January, 1865, petitioner by verbal agreement, appointed the defendant his agent to purchase cotton for him in the parish of Natchitoches, and that in a few weeks thereafter said Rogay purchased said cotton from the persons named in the original petition or account annexed, with funds which he had entrusted to him for that purpose.

The answer denies generally the allegations of the petitioner, and avers that the only transactions the defendant ever had with him was to sell him a lot of cotton in February, 1864.

The court below rendered judgment in favor of the defendant, and plaintiff has appealed.

It appears that the defendant, Rogay, was introduced to the plaintiff in this city in the early part of January, 1864, and sold him twenty-five bales of cotton then on Soldini's plantation, in the parish of Natchitoches. That about the same time the plaintiff gave the defendant $6000 in Confederate treasury notes, to invest in cotton for him in said parish. It appears that the defendant was a cotton speculator, having made investments therein before he knew the plaintiff, and having continued to purchase for himself after he had received the funds of the plaintiff. Shortly after receiving said funds from the plaintiff he went to Natchitoches parish and purchased some cotton; he returned and had a settlement with plaintiff, paying him over three hundred dollars in Confederate notes and turning over to him twelve bales of cotton at Mrs. McTier's at ninety-five cents per pound, amounting to $5700. He also sold the plaintiff several other lots of cotton stored on different plantations in said parish.

The plaintiff subsequently went to said parish to look after his cotton, and was not permitted to ship it by the Confederate authorities then occupying the parish. It was afterwards burnt or stolen except eighteen bales, which the plaintiff recovered.

Plaintiff instituted suit against Mrs. McTier for the cotton on her place, and recovered judgment against her for its value.

Plaintiff contends that his agent, the defendant, was unfaithful in reporting to him the cost of the McTier cotton at ninety-five cents per pound, whereas, in fact, she sold it for only six cents per pound in the seed; that the defendant invested the $5700 of his money in the purchase of the various lots which he afterwards sold to him; that plaintiff actually purchased his own cotton from his agent.

The evidence does not establish the allegations of plaintiff.

There is no positive and satisfactory proof in the record, the witnesses appearing to derive their knowledge only from the statements of the plaintiff and the defendant in various conversations had with them, not in the presence of each other.

Their testimony fails to establish that any of the lots of cotton except the McTier lot were purchased by the defendant with the funds of the plaintiff.

Mrs. McTier testifies that she sold her cotton at six cents per pound in the seed to Edward Seichepein. We do not think the proof is conclusive that defendant bought the cotton for his principal at that price. The evidence, however, discloses that the funds placed in the hands of the defendant were Confederate treasury notes, and if the agent has not accounted satisfactorily to his principal for them, we cannot lend the aid of this court to settle disputes in reference to an unlawful currency. If the agent bought cotton at six cents per pound and accounted to his principal in cotton at ninety-five cents per pound, then he would owe him the difference between the actual and pretended price paid therefor. We cannot give judgment against the defendant for this difference in price without sanctioning transactions in a currency reprobated by law.

However contradictory and absurd the two affidavits of the defendant may be, they do not satisfactorily establish the main position of the plaintiff that his agent sold him the McTier cotton and the Soldini cotton which already belonged to him, having been previously bought with his own funds.

The cotton at Mrs. McTier's was bought for plaintiff and accounted for by his agent at ninety-five cents per pound.

The testimony of Valade and the admissions of the parties in the record prove that the twenty-five bales on Soldini's plantation were purchased by the plaintiff from the defendant at the time they became acquainted, and before he had the funds of the plaintiff. Plaintiff admitted he bought from defendant the twenty-five bales on Soldini's plantation in the fore part of January, 1864, and paid him $1625 or thereabouts therefor. In his amended petition he only claims that he appointed the defendant his agent in January, 1865.

We do not think the affidavit of the defendant sufficiently overcomes the allegations and admissions of the plaintiff to establish his previous ownership of the cotton.

It is therefore ordered that the judgment appealed from be affirmed with costs.